The last case before we take a short break will be 21-2030 Herrera v. City of Espanola. Counsel for Appellant, please make your appearance. Thank you, Your Honor. Richard Rosenstock for Appellants Darren Herrera and Pauli Garcia. And as the Court knows, we're here on an appeal for the dismissal of Plaintiff's Section 1983 claims on a motion to dismiss and state tort claims. The complaint in the case alleged that the City of Espanola had engaged in an ongoing campaign to coerce payment of a debt owed by a third party on a water bill and had taken various actions as part of that campaign to try to force the plaintiffs, the appellants, to pay this debt which they did not owe. The appellants did not owe any money on their bill. That's alleged in the complaint. And a series of actions were undertaken to coerce these payments. First, their water was shut off on February 17, 2017. Then they were sent bills for this Mrs. Mira, whose debt it was, repeatedly over the ensuing three years. Then when they repeatedly went to the City and asked to have their water put back on, they were told you cannot have your water service until such time as you pay the Mira debt, which was over $1,750, which plaintiffs couldn't possibly afford and which they didn't owe. We've had a lot of talk. Go ahead, Jessica. I'm sorry. Isn't this case governed by our decision in Bergman versus United States? I don't believe it Once you made a request to have the water turned on and the City said, no, we're not going to do that, that's when your statute started to run. In fact, that's when you notified the City that they were violating your rights. And yet in Bergman, we said once that firm decision has been made, the fact that you repeatedly come back and ask them to change their mind and they say, no, doesn't start the statute of limitations again. You already know what their firm decision is. How is this case different? Can you distinguish it? Yeah, thank you, Your Honor. Yeah, it's different in several ways. First of all, this is a Monell claim alleging that there was a series of discrete acts and that the cause of action would have accrued at which time a reasonable plaintiff would have understood that the actions of the City were part of a custom and practice. Is it only a Monell claim? I thought that you had claims against individual defendants. They weren't resolved. We didn't know who they were actually at the point we filed the complaint and they weren't resolved. They weren't part of the motion. So we're dealing with the claims against the City here. I'm sorry. I mean, there wasn't any action on the merits in this case, was there? No, Your Honor. Well, then are you saying you abandoned any claims against the individual defendants? Well, we didn't know who they were. We still don't know who they were in each instance and we haven't abandoned them, but they weren't addressed in the court's order. Well, the court said it's barred by the statute of limitations and your complaint alleges claims, a Monell claim against the City, but also individual claims as I read it. And my point on Bergman is related not to your argument that the City had a policy that's in place, but rather that your rights were violated by these individuals. And my point is these individuals violated your rights as of February 17th of 2017, and you knew it. Well, no, I think, Your Honor, the thing of it is that there's different individuals and the fact that some of them were involved in ongoing actions which occurred within the limitations period. I think that either the continuing violations doctrine applies or I personally, we think that these are discrete acts. For example, if the arrearance had been told you can't have your water service, your water service is being cut off because you're Hispanic, and then they came back repeatedly over the next three years and asked for their water service to be turned on and they were told you can't have water service because you're Hispanic. I don't think anyone would question each of those was a discrete act of discrimination, just like the discrimination that was found actionable or not found actionable. I would question it. I would look at Bergman and I'd say that on the date they first told you were terminating your right to water because you're Hispanic, you had a clear cause of action against that individual. Well, I agree with you, but I think when you come back four months later and ask again and that individual repeatedly acts because the individual didn't have to react. The individual could have said we'll supply the water service because you don't owe any money and we had no right under state law or the equal protection clause to deny you water service because there was a third party that owed the bill. How does Hamer come into play here vis-a-vis Bergman? Excuse me? The Hamer decision, Hamer versus City of Trinidad. I mean, how did those two things, how did those two decisions come into play is that the city's position is that it could continue to deny essential water service probably forever until these people paid a third party bill, which the city had no right to collect under state law. This was the city's custom and practice to try to do this. I'm sorry, maybe my question was not clear. We're not talking now, we are not talking about your mail claim. We're not abandoning it, your claims against the individual defendants. Judge McHugh was asking you a question about Bergman. I'm saying how does that interact with our precedent in Hamer? I think it would involve which individuals engaged in repeated acts, which we were hoping to determine on discovery because there's various people that work in the water department in Española and they come and they go and some of them are there for a period of years and some aren't. My clients don't know who all these people are by name. Well, it seems to me you have a, well, let's go back to Judge, let's stay on the Hamer topic and it seems to me that you have a distinct case here from Hamer. So, Hamer arose in a situation where the City of Trinidad had an explicit statutory direction to provide access for the plaintiff. What's your clear statutory directive to the City to provide, you know, to not charge you for someone else's water or to provide you water even though there was an outstanding bill? Well, the authority is, as the New Mexico Supreme Court held in Batini versus City of Las Vegas back in the Las Cruces, excuse me, back in 1971 where the court specifically held that a municipality cannot withhold water service pursuant to the statute that is now 3-23-1 unless the person whose water being withheld owes money on a water bill, which was not the case here. So, that seems like a state law question you're raising. Has the New Mexico Supreme Court indicated anything on the statute of limitations issue on that state law question? No, it hasn't, Your Honor. I don't think it's come up in New Mexico since the Batini case for another city to try to withhold water service based on a third party's bill because it's against the law in New Mexico and our Supreme Court said that back in 1971. So, the answer is no. So, is it fair to say that, let's play off the Batini case for a second, it would it be fair to say then that your argument would be there was a continuing obligation to provide water to your clients and therefore each time they went to the City office and said give me my water and they denied them the water that that was a discreet act of infringement of their rights? Yes, Your Honor. We also would argue that the equal protection, there's a whole slew of cases from different circuits applying the equal protection clause to the creation of classes of two classes where you have a person who buys property or is a tenant and the landlord or the prior owner owes a bill that that's violates equal protection on a rational basis inquiry. So, under both those theories, yes. Well, the latter is a merits theory. What we're talking, what I'm talking about now is just the limitations question of whether you have a essentially a repeated violations theory to pursue relative to their denial of your water. Yes, Your Honor. Okay. We do believe that each of these acts was a discreet act and in regard to the individual defendants, it will really depend on when they acted. Some of them who acted only in February of 2017, claims against those individuals were barred by the statute of limitations, but those that continue to act throughout, the case is very similar to the denial of jail, medical services in jail, very similar. Well, that's generally pursued under a continuing violations theory. So, your Monell theory claim, are you basically relying on your continuing violations theory for that claim? You know, Your Honor, it becomes difficult to distinguish between the two. It really does. Well, the law has done it and so did Hanger. They're discreet theories. We think that the continuing violations theory may be more applicable because it is a policy and custom that's being alleged here. Okay, I'm not asking you to abandon anything. I'm just trying to say, what do you think there's a fit for the continuing violations theory? You think there is a fit for it, right? Absolutely, Your Honor. Yes. Okay. Let me ask you on your New Mexico Tort Act claim, are you pursuing that only under a continuing violations theory because you cite Charles and Charles is a continuing violations case? Right. We've cited Charles for that theory. We also believe that each of those acts was a discreet act by the city of Española. But is it acts or act? Wasn't the act in question, the turning off of the water to begin with? That was the initial act, but these acts continued on the part of the city, sending bills, demanding payment for the myriad debt, and then telling them you can't have water until such time as you pay that debt. So we think it was discreet acts by the city and continuing. We think it's applicable under both actually. Well, you only cited Charles under the New Mexico Tort Claims Act, and that's a continuing violations theory. Okay. Your Honor, we have about three and a half minutes left. I'd like to preserve that for rebuttal if it's appropriate. That's fine. May it please the Court, Mr. Rosenstock, good morning. My name is Jessica Nixon, and I'm here on behalf of the city of Española. At issue in this case is whether pursuant to Rule 12b-6 of the Federal Rules of Civil Procedure, the United States District Court for the District of New Mexico properly dismissed appellant's complaint as being barred by the statute of limitations. Based upon the allegations pled by appellants in their complaint, the dates given therein make clear that the right has been extinguished by the statute of limitations. In fact, plaintiff's complaint was not filed until three months after the latest possible date that the statute of limitations could have accrued. On June 4, 2020, appellants Darren Herrera and Paula Garcia filed their complaint alleging that claims pursuant to Section 1983 and the claims pursuant to the New Mexico Tort Claims Act. Importantly, in this case, there's no dispute as to the statute of limitations which are applicable to the appellant's respective claims in this matter. Yes, there's a question of when it accrues, though, when their claims accrue under that statute, right? That is correct, Your Honor. Okay, and let me ask you a general question, and this is apart from just as a categorical matter, just high level. Do you think that a continuing violations doctrine can apply in certain 1983 cases? I'm not saying it has to apply here. I'm just trying to, because we, our case law has been a little squishy on that point, so I'm just trying to understand what's your view on that. Thank you, Should be extended to Section 1983 claims. I think the case law does make clear that the purpose of a statute of limitations is to be easily applied by the courts and attorneys in litigation, so as not to perpetuate litigation purely on statute of limitations grounds based on the facts of any individual case. Well, in Hammer, we applied the repeated violation doctrine to a 1983 case. Is there any reason why we would apply the repeated violation doctrine but not the continuing violation doctrine under Section 1983? I do think that the repeated violation doctrine, Judge Hughes, is a little bit different than the continuing violation doctrine, and in the repeated violation doctrine, what you have is a series of discrete individual events that may or may not occur. So, with the continuing violation doctrine, it does not apply to a single discrete act, and that's the difference is these discrete acts between those two doctrines. And so, with the continuing violation, there's only one discrete act for which the statute can accrue, and in the repeated violations doctrine, there's multiple acts for which the statute of limitations can accrue with each act. What about the New Mexico Tort Claims Act? In New Mexico, can you extend the statute of limitations by either the continuing violation doctrine or the repeated violation doctrine, or either of those doctrines available under New Mexico law for the Tort Claims Act? It is the City of Española's position that you cannot extend the statute of limitations for the New Mexico Tort Claims Act. The statutory language under NMSA 1978 section 41-4-15a makes clear that a claim is forever barred if not brought within two years of the occurrence. Again, the same type of policy rationale for the section 1983 claims applies here under the New    limitations can accrue with each act. What about the statute of limitations for judges and attorneys in a case to eliminate the litigation about issues on the statute of limitations if they're applied on an individualized basis of the facts of a certain case? Well, if easy application was all that we cared about, there would be no continuing violations doctrine, no repeated violations doctrine in any context. I'd say read what the statute says and it's done, right? So that can't be the operative principle for everything we do. Easy is good. That is true, Your Honor. I see that argument. I just think the position here is that there was a single discreet act which triggered that statute of limitations. And just because the plaintiffs have alleged these repeated violations does not mean that that gets extended for an indefinite period of time. I'm sorry, I didn't mean to cut you off. Go ahead. No, please. Let me ask you a question about the district court seemed to have an alternative rationale as it relates to property interest and the fact that essentially there was no property interest at play here. Now, I want to understand your argument on that point. It seemed to be that you were making a distinction between terminating existing service and the actual application or securing of service of water. Did I understand that correctly? Yes, Your Honor, you did understand that correctly. And what about Patini then? I mean, Patini involved somebody trying to get water. And I mean, they agreed to pay under protest, but they were trying to get water. And they were in Patini, the plaintiffs were attempting to protect a continuing interest. And I think that's the key distinction that we have here in this case, is that once the appellants, Mr. Herrera and Ms. Garcia terminated their water service and confirmed that the account would be closed, the refund would be sent to their address, there was no longer a protected interest in water provided by the city of Española. There's no property interest in water, period, unless it is in the termination of an existing claim to water. Correct. And Patini is different. I'm struggling to understand why. Because I mean, they applied for water. Okay, they and they this, in some ways, it maps right on to this situation, they apply for water, and they got their own account, which is equivalent to saying terminate this old account, and give me a new account. And and the only difference is this, these plaintiffs didn't pay. I mean, in Patini, they paid under under protests, and then they sued, right? Respectfully, Your Honor, I do think the facts are just somewhat different. If we tease that out a little bit. I'm asking for your help, tease it out. Absolutely. So in Patini, the the plaintiffs did apply for water, had an account, and paid a pass to amount owed associated with their address. In this case, the Mr. Herrera and Ms. Garcia did exactly that. They opened a new account with their 2016. And there was a pass to amount associated with the address, as described at length, in the briefing and some of the lower courts decision that there was a bill sent for the prior owner to the last known address, which was the same as the appellant's address in this case. The difference in this case from Patini is that the account was terminated on February 13, 2017. So that account no longer existed. So therefore, there's no longer a protected property interest in the water provided by the City of Española. A question whether the water was turned on or turned off. In other words, turning at the tap when the account was terminated, they cut the water. Is that what you're saying? As opposed to in Patini, where it was just a shifting of who got the water, who was living at that residence. And that's similar in this case. However, on February 13, 2017, the City was no longer supplying water to the residents at all, because the account was unpaid. Because they cut it off, because they didn't pay them, because they were holding them responsible for somebody else's bill, which is what Patini said can't do, right? I understand that that is the allegation. And I think that what makes it clear that that's not actually the case is plaintiff's allegation in their complaint that the water was terminated. He went to the City of Española to find out why. He was told why. And then he consented and confirmed to agree to the refund offered by the City of Española of $220 out of the $380 that he had deposited. Well, but that was because they were applying it to the bill of the prior person, right? No, Your Honor, that's incorrect. As Mr. Rosenstock stated and is put in the complaint, the bill owed by the prior owner was well over $1,700. And so therefore, there would not have been enough of that security deposit remaining to discount or offset that bill owed by the prior owner. What was taken out of that bill, based on the allegations that the complaint is reasonably, the reasonable inference is that it was the bill owed by Mr. Herrera and Ms. Garcia for the approximately two and a half months that they received water from the City of that termination hadn't occurred, that the City would have continued to supply water to the Herreras, even though they did not pay the bill of the prior owner. Yes, Your Honor, absolutely. There was no delinquency. The delinquency wasn't on the account owned by Mr. Herrera. If he had paid his water bill and agreed to use the security deposit funds to pay that and reapplied, submitted the proper documentation for an application to keep that account open, the City absolutely would have continued supplying water to Mr. Herrera. However, the account was delinquent at the time that it was terminated, which is why the amount was deducted from the security deposit for Mr. Herrera's account only. I think what helps make this clear is that the City would have continued to send bills to the residence where Mr. Herrera and Ms. Garcia lived. However, the bill was addressed to Ms. Miera. There were separate bills sent to those residences. Plaintiff's own allegations establish that the bills were addressed to Ms. Miera and for an amount owed by Ms. Miera, who was the prior owner at the residence. Okay. Go ahead. I'm sorry. No, please. So if I understand, and this is helpful, you are teasing now. Let me understand this. Okay. So if I'm reading under the complaint as you understand it, what happens here then is they had made a deposit for their account. They keep getting bills from Miera and they say, well, we don't want to do that. We don't want to keep getting these bills. So they go up, they terminate their account, they get a refund of their money, and therefore they have no water at all and they keep getting the bills of Miera. And so your position would be if they had just said, okay, we disagree with getting these bills from Miera, but they paid their own account, they would have kept getting water. They would have not been terminated. That is correct. And that's the distinction between this case and the Bettini case. And so the water here was never cut off before that when they went in and terminated. I thought what instigated the visit was cutting off the water. The water was cut off. Okay. That is what instigated the visit. And the distinction between what happens here is Mr. Herrera does not agree to pay the amount owed on his account. Instead he says, please terminate my account, take the money owed out of my security deposit, and refund me that $220 at my residence. What happens is the only means that the city of Espanola has to collect the past due amount owed by Ms. Miera is to continue to send her bills at the last known address. Okay. This is a motion to dismiss, right? Correct. Okay. So we're going to take at the end of the day, whatever the complaint says, the complaint says. And we're going to take those facts because I didn't understand this to be as you've just described it in terms of reading the complaint. But I'll go back informed by this information and read it again. So under your view, yes, it was terminated. But when they came up and said if they had agreed to pay on their account, the water would have continued and there would be no issue. Correct. If their account, the account in Mr. Herrera's had stayed current, they would have continued to receive water service. So their account wasn't current? Their account wasn't current when he went up? It is the city's position that it was not. However, that is not something that is put in the complaint. Okay. So looking at the allegations of the complaint, what we do know is that the Miera account was passed you by over $1,700. What we also know from the complaint itself is that the security deposit of $380 was refunded in a total amount of $220. That $140 that was deducted from the security deposit, $160, excuse me, that was deducted from the security deposit could not have been paid, but to offset the delinquency of the Miera account, it had to have been being paid for the Herrera account. Well, but yes, but could not just have been a prorating issue as opposed to some notion of delinquency? In other words, depending on when he went, he went up on what, the 17th or something? I don't remember, somewhere mid-month, right? Correct. And so if he goes up mid-month and they say, okay, well, we bill every month and you're up here. And so we're going to deduct what you for the water you've used and we'll give you the rest back. So that's not a delinquency. That's a prorating of what you've used, right? And I think that the complaint is silent in that regard. We're going to construe it in the light most favorable to them though then, right? And most favorable to them establishes that they had received water for a period from December 22nd, 2016 until February 13th, 2017. When the city turned it off, even though the account had previously been shifted to the Herrera's, not Miera. So the water was shut off on the Herrera's account. And then I'm looking at the complaint right here and it says they went to the city of Espanola and were told that they was turned off because of the outstanding prior owner's bill. Why don't we have to take that as true? Even if that is taken as true, the city of Espanola's position is that is the date the statute of limitations accrued, which was a little over three months after. If we take the statute of limitations as having accrued on February 13th, 2017, then that statute of limitations expired in 2019 and 2020 for the state and federal claims respectively. But that's a question from the property interest question I was asking you, which is if we take their allegations as true, there was a termination of their water. And therefore, why wouldn't they have a property interest in that water? They no longer had a property interest after that termination. So each of the acts that occur after that termination cannot be said to have violated their due process rights or continued the violation that initially occurred on February 13th, 2017. All right. Any more questions from the public? I don't need to use it, but you have it if you wish to. Thank you, Your Honor. First of all, I've got to address the way, I think the court has addressed it, but I feel a need to, the way counsel Ferrappelli has framed the complaint. The complaint specifically says that at the date of termination, this is paragraph 16, it's the appendix page, I guess it's DM 10, that on February 13th, 2017, the water was cut off and that in fact, plaintiffs were not delinquent on their bill, which was not due for payment until February 20th. That's what it says in the complaint. But the water was cut off anyway. And they were told when they went in, the water's cut off because the person who owned this property before you owes us money. And repeatedly, that's what they were told according to the complaint, which has to be taken as true, because why would they want their own water turned off when they don't have a well? Well, let's play that out then. I mean, the last thing I think Ms. Nixon said is even if that were true, that the water was cut off then, then their property interest such that it was related to that cut off, and therefore they should have sued at that point. And if they didn't sue at that point, they don't have an actionable property interest claim or due process claim going forward. I think that's where Patini comes in, where the law in New Mexico under Statute 3-23-1 is that you have a right to obtain water, unless you haven't paid your bill in over 30 days, which is not the case here. And the fact that the city wrongfully allegedly terminated in the first place doesn't mean that they can keep doing this, you know, forever. When the plaintiffs go back in and ask to have water put on, and they're told you can't have the water because the third party owes money on it. So I think under Patini, the property interest is there. It's an interest that continues till the water is turned on. They had a right to have water under state law, and under the Equal Protection Clause, it was unlawful to deny them water based on a classification of trying to collect water, I mean, a bill owed by a third party. So under your view, as characterized by the complaint, there was an unlawful termination, and every day thereafter, and in particular, when they demanded, and then, you know, following a sort of continuation theory, or repeated violation theory, every time they walked up there and said, give me my water, and there was a continuing obligation, and they didn't give them water, there was another infringement of their rights. That's correct, Your Honor. That's what we which, in the district court case, before it came up to the 10th Circuit, and this issue never got dealt with in the 10th Circuit, for 11th Amendment reasons, whatever, the Vasquez District Court laid out how the continuing violations doctrine fit well with the Monell claim, because of the way a Monell claim is required to be proven. And the fact of the matter is, it would have been improper for the plaintiffs to have filed a lawsuit before they had enough evidence that a Monell, a pattern and custom existed. Judge Browning, in the Griego case, Griego versus City of Albuquerque, dismissed the Monell claim precisely because the plaintiff simply alleged that the city was liable because they maintained the custom and practice, with no allegations of any acts that would have constituted that custom and practice. And I don't think that we want, in court, we don't want for against supervisory officials and cities with no evidence whatsoever to support their claim and hope that in discovery, they'll come up with some evidence that will show a custom and practice. And in this case, it took a period of time to realize that this was a city practice and custom. And I think the continuing violations doctrine should be applied in this case to a 1983 case, the same as it's applied to all these other remedial statutes. You aren't abandoning your repeated violations? I'm not abandoning. I mentioned in the brief. All right. It's a difference in damages, for sure, in terms of when it is. It does. And we would leave that to the court. But what was done was wrong, and it was unconstitutional. And we asked this court to reverse the decision of the district court and remanded back on either the discrete action theory or the continuing violation or repeated violation theory. And we thank you for the opportunity to present our case here. Thank you, counsel. Case is submitted.